**TREEHOUSE LAW, LLP**
Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Katherine Phillips (SBN 353048)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
kphillips@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PORSCHE DESRYS, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>TRADITIONAL MEDICINALS, INC.,<br><br>*Defendant.* | CASE NO.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Porsche Desrys ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Traditional Medicinals, Inc. ("Defendant"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

**INTRODUCTION**

1. This class action seeks to challenge the sale of Defendant's unlawful herbal supplement products (the "Products").[1]

2. Defendant's herbal supplements claim to support, *inter alia*, joints, digestion, heart health, and even sleep.

3. These claims are regulated by the Food and Drug Administration ("FDA") as "structure function claims" because supplements with such claims (e.g., "Sleep Support") are purporting to affect the structure or function of the body.

4. Because many of the ailments that herbal supplements claim to treat can be symptoms of serious underlying health conditions, the FDA has implemented precautions to warn consumers about supplements with structure function claims.

5. Specifically, the FDA requires that companies place a prominent disclaimer on any supplement making a structure function claim. The disclaimer must state:

> These statements have not been evaluated by the Food and Drug Administration. This Product is not intended to diagnose, treat, cure, or prevent any disease.[2]

6. The disclaimer is one of the only safeguards on supplement labels protecting consumers, and it puts consumers on notice of two key qualifications regarding structure function statements.

7. First, because the FDA does not evaluate a supplement's structure function claims (e.g., "Sleep Support"), it is imperative for consumers to understand that supplements have not been approved, reviewed, or tested by the FDA for efficacy or safety.

---

[1] The full list of products challenged in this action are outlined in Exhibit A.
[2] 21 U.S.C. § 343(r)(6)(C).

8. As noted by the FDA, "few dietary supplements have been the subjects of adequately designed clinical trials," and "[m]any marketed supplements have not been the subjects of adequate studies to establish whether or not they are safe or effective, or the nature of the benefits they may provide."[3]

9. Second, the FDA's required warning that supplements are not intended to diagnose, treat, cure, or prevent any disease is essential to inform consumers that supplements are not a replacement for other forms of healthcare, such as physician care or prescription medicine.

10. For example, while someone suffering from indigestion may choose to utilize an herbal supplement like "digestion support" tea as a means of managing discomfort, it is important that a consumer not forego consulting a doctor for reoccurring symptoms (e.g., compromised digestion, gas and bloating) that could ultimately be signs of a serious underlying condition.

11. In other words, when a manufacturer, like Defendant, makes structure function claims ("digestion support", or "relives gas + bloating" ) related to the symptoms of a disease and fails to properly warn consumers, such claims may cause consumers to supplant the necessary diagnosis and treatment of that disease with supplements that have never been tested by the FDA for efficacy and that are not intended for that purpose.

12. Lastly, to ensure consumers see the disclaimer, the FDA has strict, express requirements on the disclaimer's location.

13. Of particular relevance, if a structure function claim is placed on the ***front*** panel of a supplement, the disclaimer ***must*** also be on the same ***front*** panel.[4] The FDA has reasoned that "the placement of the disclaimer on a panel other than where the statement is made would not meet the statutory requirement for the placement of the disclaimer [because] . . . the disclaimer must be within ***the same field of vision as the statement itself***."[5] Clearly, the FDA is concerned that consumers will

---

[3] *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1003, 2000 WL 4559 (Jan. 6, 2000) (to be codified at 21 C.F.R. pt. 101).
[4] *See* 21 C.F.R. § 101.93(d).
[5] Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements, 62 Fed. Reg. 49859, 49865, 1997 WL 582662 (Sept. 23, 1997) (to be codified at 21 C.F.R. pt. 101) (emphasis added).

not see the disclaimer, especially because a large majority of consumers only look at the front of a product before deciding to purchase it.

14. As "research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands."[6]

15. Here, Defendant makes structure function claims on the front panel of all the Products but fails to also include the disclaimer on the same front panel of the Products, as required by the FDA. As such, Defendant has violated the FDA's regulations.

16. Further, failure to abide by these regulations also renders the Products unapproved drugs that may not legally be introduced into interstate commerce.[7]

17. Defendant's violation of federal regulations also violates the California Sherman Law, which adopts all of the FDA's labeling regulations. Defendant's Sherman Law violations serve as predicate violations for Plaintiff's claim under California's Unfair Competition Law ("UCL").

18. As a result of Defendant's unlawful labeling of the Products, Plaintiff and members of the class paid a price premium for the Products.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure and (1) there are more than 100 Class members; (2) the parties are minimally diverse, as Defendant is a citizen of states different from at least some members of the proposed class; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

20. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, is headquartered in California, or otherwise intentionally avails itself of the markets within California through its sale of the Products and other goods in California to California consumers.

---

[6] Jesper Clement, *Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on The Visual Influence of Packaging Design*, 23 J. Marketing Management 917 (2007).

[7] *See* 21 U.S.C. §§ 321(g)(1)(C), 331(d), 355(a).

21. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and Defendant is a resident of California.

**PLAINTIFF**

22. Plaintiff is a citizen of California and currently resides in Rio Linda, California.

23. In or around August 2025, Plaintiff purchased Defendant's Smooth Move Tea, Throat Coat Lemon Echinacea Tea, Breathe Easy Tea, and Nighty Night Extra Tea Products from a Sprouts retailer in Natomas, California.

24. The Products Plaintiff purchased had structure function claims on the front panels ("Relieves Occasional Constipation" "Supports Throat Health & Immune Function" "Promotes Respiratory Health", and "Deeply Relaxing Sleep Support"). However, the labeling of the Products Plaintiff purchased was unlawful because the Products failed to include the required disclaimer on the front panels of the Products, as required by the FDA and California law.

25. As the entity responsible for the development, manufacturing, packaging, labeling, advertising, distribution, and sale of the Product, Defendant knew or should have known that the Products make unlawful structure function claims and that the Products are unapproved drugs that may not be lawfully introduced, sold, or delivered into interstate commerce. Nonetheless, Defendant unlawfully sells and markets the Products in this manner.

26. Defendant's unlawful conduct caused a financial injury to Plaintiff and other consumers because Plaintiff and other consumers paid a price premium as a result of Defendant's unlawful labeling of the Products.

**DEFENDANT**

27. Defendant Traditional Medicinals, Inc. is a California corporation with its principal place of business in Rohnert Park, California. Defendant, through its agents, is responsible for the manufacturing, marketing, labeling, packaging, distribution, and nationwide sale of the Products at issue, including within the State of California.

/ / /

/ / /

/ / /

**FACTUAL ALLEGATIONS**

A.  **Federal Law Prohibits Dietary Supplements From Making Certain Claims Without Adequately Qualifying them with a Disclaimer**

28.  The FDA regulates dietary supplements, including herbal supplements, through the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq.* (the "FDCA"), as amended by the Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, 108 Stat. 4325 (the "DSHEA").[8]

29.  Among other requirements, the DSHEA outlines what statements supplement manufacturers are allowed to make in conjunction with their products. *See* 21 U.S.C. § 343(r)(6).

30.  Specifically, a statement may be made on a supplement if the statement "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function" ("structure function claims"). *Id*.

31.  However, the DSHEA only permits companies to make structure function claims if certain conditions are met.

32.  First, a dietary supplement may only make a structure function claim if the statement "contains"[9] a disclaimer stating:

> "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease."

21 U.S.C. § 343(r)(6)(C) ("DSHEA disclaimer").

33.  Second, and of equal importance, the DSHEA disclaimer must be properly located on the supplement's label, to ensure consumers actually see the DSHEA disclaimer when they see

---

[8] A dietary supplement is deemed a "food" under the FDCA. 21 U.S.C. § 321(ff)(3) ("Except for purposes of paragraph (g) and section 350f of this title, a dietary supplement shall be deemed to be a food within the meaning of this chapter."). Under DSHEA, a "dietary supplement" includes products containing "an herb or other botanical" intended to supplement the diet. 21 U.S.C. § 321(ff)(1)(C). Therefore, the Products, which are labeled as "herbal supplements," are subject to FDA regulations governing the labeling of dietary supplements, and food generally.

[9] As discussed *infa* ( ¶¶ 36-40), the FDA has clarified that "contains" means appearing "anywhere on the same page or panel of labeling" as the structure function claim. 62 Fed. Reg. at 49859 *supra* note 5.

the product's structure function claim.

34. The FDA implemented the DSHEA disclaimer requirement for a reason: to warn and protect consumers. Importantly, it represents the key compromise between industry and the FDA that led to the enactment of DSHEA. The disclaimer enabled DSHEA to be passed by Congress in the first instance, and for dietary supplements to be marketed and sold without first clearing the arduous FDA drug review and approval process.

35. To achieve this goal, under its administrative rulemaking authority, the FDA has promulgated specific regulations that dictate the physical location of the DSHEA disclaimer on a supplement's various panels.

36. Specifically, for a structure function claim to be legally compliant:

> The disclaimer shall be placed adjacent to the statement with no intervening material or linked to the statement with a symbol (e.g., an asterisk) at the end of each such statement that refers to the same symbol placed adjacent to the disclaimer specified in paragraphs (c)(1) or (c)(2) of this section. ***On product labels and in labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel or page where there such is a statement.*** The disclaimer shall be set off in a box where it is not adjacent to the statement in question.

21 C.F.R. § 101.93(d) (emphasis added).

37. The FDA's regulations are unequivocal – if a structure function claim is made on a specific panel of the label, the DSHEA disclaimer *must* appear *on the same panel*. *Id.*

38. For example, if a structure function claim is on the *front* panel of a supplement, the DSHEA disclaimer must also appear on the front panel.

39. The FDA has been clear about the strict requirements of 21 C.F.R. § 101.93(d), and reiterated the importance of having consumers see the DSHEA disclaimer when a structure function claim is made on a dietary supplement:

> [T]he placement of the disclaimer on a panel other than where the statement is made would not meet the statutory requirement for the placement of the disclaimer.
>
> **
>
> The agency rejects the comments that stated that repetition of the disclaimer on every panel or page where a statement made in accordance with section 403(r)(6) of the act [(codified at 21 U.S.C. § 343(r)(6))] appears is unnecessary. The agency concludes that to meet the statutory requirement that the disclaimer be "contained" within the statement, ***the disclaimer must be within the same field of vision as the statement itself***. Because the agency concludes that the placement of the disclaimer anywhere

    on the same page or panel of labeling is equivalent to meeting the requirement of being "contained," each of the suggestions for the placement of a single disclaimer on a product label (e.g., under the nutrition label, adjacent to the most prominent claim) would not provide an acceptable alternative.

Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements, 62 Fed. Reg. at 49864 (emphasis added).

### B. The Products and Their Labeling

40. The front panels of all the Products[10] at issue have structure function claims (e.g., "Deeply Relaxing Sleep Support," "Digestion Support," "Relieves Gas + Bloating," and "Promotes Respiratory Health") (the "Representations"). *See examples on the following pages*.

41. In addition, the Products all tout the brand name "Traditional Medicinals."



---
[10] See Exhibit A for full list of the products at issue in this case and their front label claims.

-7-
CLASS ACTION COMPLAINT







42.     Despite making structure function claims on the front panel of the Products, Defendant has failed to also include the DSHEA disclaimer on the same front panel. *See exemplary images above*.

43.     This failure is a clear violation of 21 U.S.C. § 343(r)(6)(C) and 21 C.F.R. § 101.93(d).

44. These violations of the FDA's regulations undermine the purpose and rationale for the disclaimer, which is intended to protect consumers. Here, it is particularly important for consumers to see the disclaimer because Defendant also uses the brand name "Traditional *Medicinals*," which signals to consumers that the Products are intended to act like "medicine" for ailments, a practice that the FDA warns against.[11]

## C.     The Products Are Unapproved Drugs Under the FDCA

45. Under section 201(g)(1)(C) of the FDCA (codified as 21 U.S.C. § 321(g)(1)(C)), a product that makes structure function claims is classified a drug.[12] However, the FDCA also states that if the product meets the requirements of 21 U.S.C. § 343(r)(6) (herein, "343(r)(6)"), then it is exempt from being classified a drug, and may instead be marketed and sold as a dietary supplement.[13]

46. The FDA's regulations have further clarified that companies seeking to comply with 343(r)(6) to avoid classification as a drug under section 201(g)(1)(C), must also comply with all the provisions of 21 C.F.R. § 101.93 (herein, "101.93").[14]

47. As discussed *supra* in Section B, Defendant fails to comply with both 343(r)(6) and 101.93(d) because there are structure function claims on the front panel of the Products but the Products fail to include a DSHEA disclaimer on same front panel.

---

[11] Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. at 1022 (noting that product names using "terms such as 'cure,' 'treat,' 'correct,' [and] 'prevent'" may "suggest treatment or prevention of a disease").

[12] 21 U.S.C. § 321(g)(1) defines "drug" to mean, *inter alia,* "articles (other than food) intended to affect the structure or any function of the body of man or other animals."

[13] 21 U.S.C. § 321(g)(1) exempts "[a] food or dietary supplement" that makes "a truthful and not misleading statement . . . in accordance with section 343(r)(6) . . ." from being classified a drug.

[14] 21 C.F.R. 101.93(b) ("*Disclaimer*. The requirements in this section apply to the label or labeling of dietary supplements where the dietary supplement bears a statement that is provided for by section 403(r)(6) of the [FDCA codified as 21 U.S.C. § 343(r)(6)], and the manufacturer, packer, or distributor wishes to take advantage of the exemption to section 201(g)(1)(C) of the act that is provided by compliance with section 403(r)(6) of the act.")

-11-
CLASS ACTION COMPLAINT

48. Because Defendant violates 343(r)(6) and 101.93(d), the Products are not exempt under section 201(g)(1)(C) of the FDCA. Thus, even though the Products are labeled as "herbal supplements," they are actually classified as drugs.

49. Drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA under sections 505(a) and 301(d) of the FDCA (codified as 21 U.S.C. § 355(a) and 21 U.S.C. §§ 331(d), respectively).[15]

50. Upon information and belief, the Products have not been approved by the FDA. Thus, the Products are unapproved drugs that cannot be introduced into interstate commerce under the FDCA.

51. Defendant sold the Products across state borders (i.e., nationwide) and therefore introduced or delivered for introduction unapproved drugs into interstate commerce, in direct violation of 21 U.S.C. §§ 331(d), 355(a).

**D.   The California Sherman Law Has Adopted and Incorporated All of the FDCA's Food and Drug Labeling Laws As Its Own**

52. California's analog to the FDCA is known as the Sherman Law. Cal. Health & Saf. Code §§ 109875, *et seq.* (the "Sherman Law"). The Sherman Law incorporates all food labeling regulations promulgated by the FDA under the FDCA. *See* Cal. Health & Saf. Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

53. The Sherman law also incorporates all drug regulations of the FDCA. Specifically, California Health & Safety Code § 110110(a) states:

> All regulations relating to [*inter alia*] new drug applications, except for abbreviated new drug applications, adopted pursuant to Section 505 of the federal act (21 U.S.C. Sec. 355) . . . , that are in effect on January 1, 1993, or that are adopted on or after that date, shall be the new drug [] application regulations of this state.

---

[15] 21 U.S.C. § 321(b) (defining "interstate commerce" to include "commerce between any State or Territory and any place outside thereof").

Similarly, California Health & Safety Code § 110111 states:

> All nonprescription drug regulations and any amendments to those regulations adopted pursuant to the federal act, that are in effect on January 1, 2000, or that are adopted on or after that date, shall be the nonprescription drug regulations of the state.

54. As discussed *supra* in Sections B and C, Defendant has violated federal laws and regulations by selling the Products without a compliant DSHEA disclaimer (21 U.S.C. § 343(r)(6)(C) and 21 C.F.R. § 101.93(d)), ***and*** by introducing unapproved drugs into interstate commerce (21 U.S.C. §§ 355(a), 331(d)).

55. Therefore, because California Health & Safety Code §§ 110100(a), 110110(a) and §110111 of the Sherman Law incorporate all federal food and drug labeling requirements, Defendant's violation of federal law and regulations also violate California law.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following classes:

**Nationwide Class**
All persons who, while in the United States and within the applicable statute of limitations period, purchased the Products (the "Nationwide Class").

**California Class**
All persons who, while in the state of California and within the applicable statute of limitations period, purchased the Products (the "California Class") (collectively with the Nationwide Class, the "Class").

57. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

59. Plaintiff is a member of both Classes.

60. **Numerosity:** Members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's and other retailers' records. At a minimum, there likely are hundreds of thousands of Class members.

61. **Commonality:** These are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitations:

    a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

    b. whether Defendant knew or should have known the structure function claims were unlawful;

    c. whether Defendant knew or should have known the Products were unapproved drugs that could not lawfully be introduced into interstate commerce; and

    d. whether certification of each Class is appropriate under Rule 23.

62. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Product(s) which made unlawful structure function claims and were unapproved drugs. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's structure function claims were unlawful and that the Products were unapproved drugs that could not lawfully be introduced into interstate commerce.

63. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Class as her interests do not conflict with the interests of the members of the proposed Class she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

64. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry

into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

65. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

**FIRST CLAIM FOR RELIEF**
Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code § 17200, *et seq.*
(*For the Nationwide Class, or in the alternative, for the California Class*)

66. Plaintiff repeats the allegations contained in paragraphs 1-66 above as if fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

68. The UCL provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

69. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

70. Defendant's labeling of the Products was and continues to be "unlawful" because, as described *supra* in Sections B and D, there are structure function claims on the front panel of the Products but the Products fail to include the DSHEA disclaimer on the same front panel, as required by California's Sherman law (Cal. Health & Saf. Code § 110100) which adopts all federal food labeling requirements.

71. Defendant's sale of the Products was and continues to be "unlawful" because, as discussed *supra* in Section C and D, the Products are unapproved drugs that cannot lawfully be introduced into interstate commerce under California's Sherman Law (Cal. Health & Saf. Code §§ 110110(a) and 110111), which adopts all drug provisions of the FDCA including the FDA's prohibitions on the sale of unapproved drugs.

72. To be clear, Plaintiff is not bringing a UCL claim predicated on Defendant's violations of the FDCA or the FDA's regulations. Plaintiff's UCL claim is predicated solely on Defendant's violation of several California Sherman Law provisions.

73. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and Class members. In other words, Plaintiff and Class members paid a price premium for the Products based on Defendant's unlawful labeling and sale of the Products.

74. As a direct and proximate result of Defendant's unlawful labeling and sale of the Products, Plaintiff and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

75. Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and Class members may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class Counsel;

B. A declaration that Defendant's actions, as described herein, violate the claims described herein;

C. An award to Plaintiff and the proposed Class of restitution and/or other equitable relief;

D. An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

E. An award to Plaintiff and the proposed Class of pre and post-judgment interest, to the extent allowable; and

F. For such further relief that the Court may deem just and proper.

DATED: September 16, 2025

**TREEHOUSE LAW, LLP**

By: */s/ Ruhandy Glezakos*

Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Katherine Phillips (SBN 353048)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
kphillips@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*